1

2

3

4

5

6

7

8            IN THE UNITED STATES DISTRICT COURT

9          FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11  MELINDA KEENAN and CATHERINE LIEB,

12          Plaintiffs,                    No. CIV S-10-3473 KJM-KJN

13      vs.

14  ERIC K. SHINSEKI, Secretary of Veterans

15  Affairs,

16          Defendant.                     <u>ORDER</u>

17  _____/

18          This matter comes before the court upon defendant's motion to dismiss plaintiffs'

19  second amended complaint.  (ECF 23.)  This motion was decided without a hearing.  For the

20  following reasons, defendant's motion is GRANTED.  The court also addresses plaintiffs'

21  counsel's motion to withdraw (ECF 28), which is GRANTED as explained below.

22  I.  <u>PROCEDURAL HISTORY</u>

23          Plaintiffs filed their original complaint on December 28, 2010 (ECF 1) and their

24  amended complaint on May 13, 2011 (ECF 8).  Plaintiffs filed their second amended complaint

25  on March 5, 2012, alleging three causes of action: 1) unlawful discrimination in violation of

26  Title VII, 42 U.S.C. § 2000e, *et seq*.; 2) retaliation in violation of Title VII, 42 U.S.C. § 2000e, *et*

1

1  *seq*.; and 3) on behalf of plaintiff Lieb only, violations of the Age Discrimination in Employment

2  Act ("ADEA"), 29 U.S.C. § 621, *et seq*.  (ECF 20.)

3          Defendant filed the present motion to dismiss on March 26, 2012.  (ECF 23.)

4  Plaintiffs filed their opposition on May 11, 2012.  (ECF 25.)  Defendant filed his reply on June 1,

5  2012.  (ECF 26.)

6  II.  <u>FACTS</u>

7          Melinda Keenan was employed with the United States Department of Veterans

8  Affairs ("VA") at the VA's Mather facility as a staff psychologist and post-traumatic stress

9  disorder ("PTSD") program coordinator from February 2001 to 2010.  (Sec. Am. Compl. ¶ 1.)

10  She is currently employed as a psychologist at the VA's Citrus Heights facility.  (*Id*.)  Catherine

11  Lieb was employed as a licensed clinical social worker at the VA's Mather facility from January

12  2008 to July 2011.  (*Id*. ¶ 2.)  From October 2009 to July 2011, Lieb was a social worker on

13  Mather's PTSD team.  (*Id*. ¶ 44.)

14          Maga Jackson-Triche, M.D., was "[f]or much of [Keenan's] tenure at the Mather

15  VA," the associate chief of staff for mental health services and Keenan's direct supervisor.  (Sec.

16  Am. Compl. ¶ 11.)  Steven Shotz was hired by Dr. Jackson-Triche in February 2007 and made

17  the mental health clinic's manager in April 2007.  (*Id*. ¶¶ 12, 14.)  In April 2008, Dr. Shotz

18  stepped down as clinic manager and stayed on as a staff psychologist.  (*Id*. ¶ 27.)

19          The Mather facility's mental health clinic held a staff meeting on December 3,

20  2008.  (Sec. Am. Compl. ¶ 30.)  During the meeting, a staff member "made an oblique reference

21  to how the clinic suffered when Shotz was clinic manager," to which "Keenan responded with a

22  remark about avoiding the factions that had developed in the clinic in the past and trying to find

23  a way to heal old wounds."  (*Id*. ¶ 30.)  In July 2009, Dr. Shotz filed an Equal Employment

24  Opportunity Commission ("EEOC") complaint against plaintiffs "for statements they allegedly

25  made at the Dec. 8, 2008, [sic] staff meeting."  (*Id*. ¶ 31.)  Neither party has indicated what, if

26  /////

1   any, specific findings or conclusions were reached in response to Dr. Shotz's complaint,

2   although plaintiffs characterize the outcome as "favorable to Shotz."  (Opp'n at 9.)

3          On February 12, 2010, Keenan received a written letter of admonishment.  (Sec.

4   Am. Compl. ¶ 35.)  Lieb received a one-week suspension from her job without pay.  (*Id.*)

5   III.   <u>ANALYSIS</u>

6          A.     Standard

7          Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move to

8   dismiss a complaint for "failure to state a claim upon which relief can be granted."  A court may

9   dismiss "based on the lack of cognizable legal theory or the absence of sufficient facts alleged

10  under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir.

11  1990).

12         Although a complaint need contain only "a short and plain statement of the claim

13  showing that the pleader is entitled to relief," FED. R. CIV. P. 8(a)(2), in order to survive a motion

14  to dismiss this short and plain statement "must contain sufficient factual matter . . . to 'state a

15  claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937,

16  1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A complaint

17  must include something more than "an unadorned, the-defendant-unlawfully-harmed-me

18  accusation" or "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of

19  action.'" *Id.* at 1949 (quoting *Twombly*, 550 U.S. at 555).  Determining whether a complaint will

20  survive a motion to dismiss for failure to state a claim is a "context-specific task that requires the

21  reviewing court to draw on its judicial experience and common sense." *Id.* at 1950.  Ultimately,

22  the inquiry focuses on the interplay between the factual allegations of the complaint and the

23  dispositive issues of law in the action. *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

24         In making this context-specific evaluation, this court must accept as true the

25  factual allegations of the complaint. *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007).  This rule

26  does not apply to "'a legal conclusion couched as a factual allegation,'" *Papasan v. Allain*, 478

3

U.S. 265, 286 (1986) (quoted in *Twombly*, 550 U.S. at 555), nor to "allegations that contradict matters properly subject to judicial notice" or to material attached to or incorporated by reference into the complaint.  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988-89 (9th Cir. 2001).  A court's consideration of documents attached to a complaint or incorporated by reference or matter of judicial notice will not convert a motion to dismiss into a motion for summary judgment.  *United States v. Ritchie*, 342 F.3d 903, 907-08 (9th Cir. 2003); *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995); *see also Van Buskirk v. CNN*, 284 F.3d 977, 980 (9th Cir. 2002) (noting that even though court may look beyond pleadings on motion to dismiss, generally court is limited to face of the complaint on 12(b)(6) motion).

      B.    Application

          1.  Title VII discrimination

         Defendant contends the second amended complaint has not cured the first amended complaint's deficiency in alleging Dr. Shotz was similarly situated to plaintiffs.  (Mot. at 5.)  Defendant further contends plaintiffs have not adequately pled they were discriminated against because of their gender.  (*Id.* at 7.)  In addition, defendant contends Keenan has failed to allege she suffered from any adverse employment action.  (*Id.*)  Plaintiffs contend they have sufficiently alleged they were similarly situated to Dr. Shotz, or at the very least the facts they have pled support an inference of discrimination.  (Opp'n at 7-8.)  Moreover, the letter of admonishment issued to Keenan is an adverse employment action.  (*Id.* at 9.)

         Title VII makes it unlawful for an employer to discriminate against any individual "because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  It is axiomatic that a claim for discrimination in violation of Title VII must allege "race, color, religion, sex, or national origin" as a "motivating factor" in the discrimination.  42 U.S.C. § 2000e-2(m).  Plaintiffs' second amended complaint is explicit in stating that the alleged adverse employment actions – Keenan's letter of admonishment and Lieb's one-week suspension – taken against them were "[i]n ***direct*** ***response*** to their [employer's] having learned of

1    Plaintiffs' statements given in the SHOTZ EEO proceeding."[1]  (Sec. Am. Compl. ¶ 35 (emphasis

2    in original).)  Accordingly, plaintiffs effectively admit their sex was not a motivating factor in

3    the taking of the adverse employment actions.

4               Indeed, plaintiffs' second amended complaint is markedly devoid of well-pled

5    allegations of discrimination based on sex, and instead reflects a veritable kitchen sink approach.

6    Plaintiffs contend an inference of discrimination can be drawn from their showing:

7               [H]ow Jackson immediately favored Shotz, to the exclusion of the
               female employees, including the Plaintiffs, from the moment he
8               was hired. Shotz was given an undeserved assignment as Mental
               Health Clinic Manager during his probationary period, when
9               Plaintiff Keenan was more qualified. Shotz was allowed to operate
               a separate 'sexual trauma' PTSD group, even though it was a
10              'ruse' for him to hand-pick attractive, vulnerable females for
               participation in his program. Shotz was also allowed to sexually
11              harass another psychologist, and, when she complained about it,
               she was forced out on stress leave, while he was free to make
12              threatening comments about her to Plaintiff Keenan. When
               Plaintiffs formally complained, Jackson intervened to protect
13              Shotz, and violated confidentiality by disclosing Plaintiffs'
               complaints to the entire unit. Meanwhile, Plaintiffs were given
14              formal discipline for their complaints, while Shotz was rewarded a
               favorable EEO finding.

15

16   (Opp'n at 8-9.)  Taking all allegations in the complaint as true and drawing all reasonable

17   inferences in plaintiffs' favor as it must, the court can reasonably infer only that plaintiffs are

18   female, Dr. Shotz is a male, and Dr. Shotz was treated favorably in some aspects of his

19   employment while plaintiffs were treated unfavorably.

20              Defendant's motion to dismiss plaintiffs' claim for Title VII discrimination is

21   granted without prejudice; plaintiffs may attempt to amend this claim if they are able while

22   complying with Federal Rule of Civil Procedure 11.

23   /////

24   /////

25   _____

26        [1] Where a name is capitalized in excerpts from the complaint, the capitalization appears
     in the original.

5

2.  Title VII retaliation

Title VII makes it unlawful "for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this [title] . . . or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this [title]. . . ."  42 U.S.C. § 2000e-3(a).  "A plaintiff may meet his burden of proof for a claim of retaliation under Title VII by showing, by a preponderance of evidence, (1) involvement in protected activity opposing an unlawful employment practice, (2) an adverse employment action, and (3) a causal link between the protected activity and the adverse action."  *Freitag v. Ayers*, 468 F.3d 528, 541 (9th Cir. 2006) (citing *Burdine*, 450 U.S. at 252-53).  A plaintiff can use direct or circumstantial evidence to do so.  *Little v. Windermere Relocation, Inc.*, 301 F.3d 958, 969 (9th Cir. 2001).  "[A]n employer's [adverse employment action against] an employee can violate the section in either of two ways: (1) if the [adverse employment action] occurs because of the employee's opposition to conduct made an unlawful employment practice by the subchapter, or (2) if it is in retaliation for the employee's participation in the machinery set up by Title VII to enforce its provisions."  *Silver v. KCA, Inc.*, 586 F.2d 138, 141 (9th Cir. 1978).

Plaintiffs allege they were retaliated against because of "(1) their participation in the Shotz EEO investigation, in which they provided the same statements and complaints about Shotz's discriminatory and harassing conduct, and (2) their continuous internal complaints in the workplace about Shotz's sexual harassment, discriminatory conduct, and how it impacts patient safety."  (Opp'n at 10.)  Plaintiffs specifically pled they engaged in the following alleged protected activities: in November 2008, Keenan "wrote a candid review of [Shotz's] clinical work and her fear for patient safety [thereby] exercis[ing] her protected right and responsibility to 'whistle-blow'"; in December 2007, Keenan wrote a letter to then-Medical Director Dr. O'Neil "express[ing] her patient-related concerns"; and plaintiffs made statements while
/////

1  participating in Shotz's EEO proceeding that "reflected their concerns about SHOTZ and the
2  quality of patient care being given to the Mather veterans."[2]  (Sec. Am. Compl.  ¶¶ 19, 20, 32.)
3          With regard to Keenan's review of Shotz's work and letter to Dr. O'Neil,
4  plaintiffs have again failed to allege they opposed unlawful employment conduct, as a predicate
5  to their retaliation claim.
6          "The antiretaliation provision seeks to prevent employer interference with
7  'unfettered access' to Title VII's remedial mechanisms. It does so by prohibiting employer
8  actions that are likely to deter victims of discrimination from complaining to the EEOC, the
9  courts, and their employers. And normally petty slights, minor annoyances, and simple lack of
10 good manners will not create such deterrence." *Burlington Northern & Santa Fe Ry. Co. v.*
11 *White*, 548 U.S. 53, 68 (2006).  As discussed in this court's February 6, 2012 order dismissing
12 plaintiffs' first amended complaint, while "opposition" is interpreted "broadly," such as by
13 "including the employee's threat to file a charge," *Silver*, 586 F.2d at 141 n.2 (citing EEOC
14 Compliance Manual, 704(a) Discrimination, § 492.1(a) (1975)), Keenan does not allege that her
15 review of Shotz's work or letter to O'Neil were in opposition to unlawful employment practices.
16 *See Little*, 301 F.3d at 969 (Opposition to an employment practice "is protected when it is based
17 on a reasonable belief that the employer has engaged in an unlawful employment practice."
18 (emphasis, internal quotation marks and citation omitted)).  Keenan does not indicate with any
19 particularity what employment practices she was opposing and whether she believed these
20 employment practices to be unlawful.  More importantly, Keenan does not allege she was

21 ─────────────
22    [2] Plaintiffs' allegations include other purportedly protected activities, such as the January
   2008 staff meeting, staff interviews conducted by the National Center for Organizational
23 Development ("NCOD"), and Keenan's comments at the December 3, 2008 staff meeting (Sec.
   Am. Compl. ¶¶ 24, 25-27, 30); however, these are not considered in detail here. The bare
24 allegations that "staff" "poured out their concerns" at the January 2008 staff meeting, "staff"
   voiced their concerns regarding management to the NCOD, and Keenan made a "remark about
25 avoiding factions that had developed in the clinic in the past and trying to find a way to heal old
   wounds" at the December staff meeting are wholly insufficient in substance to be deemed
26 protected activities.  Plaintiffs do not claim that by these actions they were opposing any
   unlawful employment practices.

retaliated against as a result of these two incidents.  Rather, with regard to her letter to Dr.

O'Neil, plaintiffs only allege Dr. Jackson-Triche quoted from the letter at a January 2008 staff

meeting.  (Sec. Am. Compl. ¶ 24.)  This activity by itself does not qualify as retaliation in

violation of Title VII.  *See Burlington Northern*, 548 U.S. at 67 ("The antiretaliation provision

protects an individual not from all retaliation, but from retaliation that produces an injury or

harm.").

          With regard to Shotz's EEO proceeding, plaintiffs allege when they were

interviewed, they "engaged in protected speech not only because they were participating in an

official EEO proceeding, but also because their statements reflected their concerns about

SHOTZ and the quality of patient care being given to the Mather veterans."  (Sec. Am. Compl. ¶

32.)  Moreover, they allege Drs. Jackson-Triche and Shotz "gained knowledge of Plaintiffs'

protected statements regarding Dr. Jackson-Triche, SHOTZ, and the damage each had inflicted

upon the operation of Mather's Mental Health Clinic."  (*Id.* ¶ 34.)  Plaintiffs allege that as a

result of their statements to investigators, Keenan received a letter of admonishment and Lieb

received a one-week suspension.  (*Id.* ¶ 35.)  The court notes that the proposed reprimand and

suspension state that plaintiffs were to be disciplined based upon "disrespectful comments and/or

innuendo with regard to" Dr. Shotz from December 2008 to July 2009.  (Mot., Exs. A and B,

ECF 23-2.)  Nevertheless, even drawing all inferences in favor of the nonmoving parties as the

court must on a motion to dismiss, plaintiffs have failed to allege retaliation in violation of Title

VII.

          Defendant's contention that plaintiffs have failed to allege they engaged in

protected activity is well-taken.  (Mot. at 9; Reply at 6.)  Plaintiffs' claim of retaliation is based

on Title VII's "participation clause,"[3] which "is interpreted broadly," *EEOC v. Cal. Psychiatric*

---

[3] Plaintiffs do not say as much explicitly; however, this is clear from their description of
statements they made about Shotz during an EEO proceeding.  *See*  Sec. Am. Compl. ¶ 32 .  At
the same time, the opposition clause, which prohibits retaliation against an employee who "has
opposed any practice made an unlawful employment practice by this title," 42 U.S.C. § 2000e-

1   *Transitions, Inc.*, 725 F. Supp. 2d 1100, 1107 (E.D. Cal. 2010), and prohibits retaliation against

2   an employee who "has made a charge, testified, assisted, or participated in any manner in an

3   investigation, proceeding, or hearing under this title." 42 U.S.C. § 2000e-3(a). Regardless of the

4   broad interpretation afforded this clause, plaintiffs' claim of retaliation miscomprehends this

5   section. "The anti-retaliation provision of 42 U.S.C. § 2000e-3(a) is meant to prevent harm to

6   employees who report discriminatory employment practices or assist in the investigation of these

7   practices. . . . The purpose of the anti-retaliation clause is to maintain unfettered access to

8   statutory remedial mechanisms." *Cal. Psychiatric Transitions*, 725 F. Supp. 2d at 1107 (internal

9   quotation marks and citations omitted); *see also Burlington Northern*, 548 U.S. at 63 ("The

10  antiretaliation provision seeks to secure that primary objective [of a workplace where individuals

11  are not discriminated against because of their racial, ethnic, religious, or gender-based status] by

12  preventing an employer from interfering (through retaliation) with an employee's efforts to

13  secure or advance enforcement of the Act's basic guarantees."). Plaintiffs allege, and their

14  disciplinary documents support the inference that, a co-worker filed an EEOC complaint because

15  of their conduct towards him. (Sec. Am. Compl. ¶¶ 31-33.) They were interviewed in

16  connection with the resultant proceeding. While retaliation in violation of Title VII has been

17  found where a third party was fired in retaliation for participating in the filing and completion of

18  another employee's EEOC complaint, *Cal. Psychiatric Transitions*, 725 F. Supp. 2d at 1108, and

19  where an employee's fiancé was fired after she filed an EEOC complaint, *Thompson v. N. Am.*

20  *Stainless, LP*, 131 S. Ct. 863, 868 (2011), the present matter is distinguishable. While "Title VII

21  depends for its enforcement upon the cooperation of employees who are willing to file

22  complaints and act as witnesses," *Burlington Northern*, 548 U.S. at 67, plaintiffs here did not file

23  a complaint, assist another who had filed a complaint, or support another's complaint; rather,

24  plaintiffs opposed Dr. Shotz's EEOC complaint, which was filed as a result of their conduct.

25  ───────────────

26  3(a), has not been implicated by plaintiffs' complaint as they do not plead they opposed unlawful
employment practices in connection with their participation in the EEO proceeding.

1    Plaintiffs' Title VII retaliation complaint is dismissed with prejudice insofar as it

2    is based on their participation in the EEOC proceeding, but without prejudice insofar as plaintiffs

3    believe they can, while complying with Federal Rule of Civil Procedure 11, allege retaliation

4    resulting from other protected activities.

5    3.  ADEA

6    Title 29 U.S.C. § 623(a) makes it unlawful for an employer to discriminate

7    against an employee or prospective employee on the basis of age.

8    Plaintiffs allege Lieb's suspension was made "on the basis of her age" in violation

9    of the ADEA and her age was the "but for" cause of her suspension.  (Sec. Am. Compl. ¶¶ 56,

10   58.)  Defendant contends Lieb's allegation of age discrimination has not cured the deficiencies

11   found in the first amended complaint.  (Mot. at 10-11.)  Defendant further contends the second

12   amended complaint in fact alleges Lieb was suspended for reasons other than her age.  (*Id.* at

13   11.)  Lieb contends the "but for" test does not apply to federal employees bringing an ADEA

14   case, citing to a case from the Court of Appeals for the District of Columbia Circuit, and that the

15   complaint sufficiently alleges age was a factor leading to her suspension.  (Opp'n at 11.)

16   The standard articulated by plaintiffs for finding a violation of the ADEA is not

17   the law in this Circuit.  The Ninth Circuit has explicitly held, in a case involving a federal

18   employee bringing an ADEA claim against a federal agency, that a plaintiff must prove that age

19   was the "but for" cause of the adverse employment action.  *Shelley v. Geren*, 666 F.3d 599, 607-

20   08 (9th Cir. 2012).  Plaintiffs have not alleged that age was the "but for" cause for Lieb's

21   suspension.  (Opp'n at 11.)  Rather, their second amended complaint definitively identifies their

22   participation in the EEO proceeding as the reason for Lieb's suspension.  (Sec. Am. Compl.

23   /////

24   /////

25   /////

26   /////

¶ 35.)  Lieb's age and her employers' alleged reactions related to her age are presented in the second amended complaint only in a disjointed manner that does not support Lieb's claim. (*See id.* ¶¶ 2, 39-40, 42.)

Lieb's ADEA claim is dismissed with prejudice as amendment would be futile.

IV.  <u>MOTION TO WITHDRAW</u>

Plaintiffs' counsel filed a motion to withdraw as counsel of record on October 9, 2012.  (ECF 28.)  He contends "there has been an irreparable breakdown in the attorney-client relationship" and plaintiffs notified him he was fired several months ago.  Plaintiffs' counsel served plaintiffs with his motion to withdraw as required.  Local Rule 182(d).  The court hereby conditionally grants counsel's motion to withdraw; plaintiffs shall have thirty (30) days from the filing of this order to either hire new counsel or indicate their intent to proceed pro se on the court's docket.  Watts shall remain plaintiffs' counsel of record until the expiration of this thirty-day period.

V.  <u>CONCLUSION</u>

For the foregoing reasons, defendant's motion to dismiss (ECF No. 23) is GRANTED with prejudice as to plaintiffs' Title VII retaliation claim insofar as it is based on plaintiffs' participation in Dr. Shotz's EEOC proceeding and Lieb's ADEA claim and without prejudice as to the remainder of their claims.  Plaintiffs' may file an amended complaint within thirty (30) days of their indication on the court's docket of the identity of new counsel or their intent to proceed pro se.

IT IS SO ORDERED.

DATED:  December 18, 2012.

_____
UNITED STATES DISTRICT JUDGE